FILED & JUDGMENT ENTERED
Steven T. Salata

Apr 08 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RICHARD P. MEABON ) | Case No. 10-30455 |
| EVELYN L. MEABON ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| R. KEITH JOHNSON, Trustee for the ) | |
| Bankruptcy Estate of Richard P. Meabon ) | |
| ) | |
| Plaintiff ) | |
| ) | Adversary Proceeding |
| v. ) | No. 12-3218 |
| ) | |
| RICHARD PAUL MEABON, ) | |
| MARTHA MEDLIN, in her capacity as ) | |
| Trustee under that certain Trust ) | |
| Agreement of Raymond B. Meabon and ) | |
| Nancy E. Meabon dated May 10, 1991 ) | |
| ) | |
| Defendants. ) | |

**ORDER REVOKING DISCHARGE**

**THIS MATTER** came before the Court for trial on January 27, 2014 on the Trustee's Complaint to Revoke Discharge, for Accounting, and for Turnover of Property. Keith Johnson appeared on behalf of the Trustee for the bankruptcy estate of Richard P. Meabon ("Richard Meabon" or the "Debtor"). Michael Elliot appeared on behalf of

1

Defendants Richard Meabon and Martha Medlin, in her capacity as Trustee under that certain Trust Agreement of Raymond Meabon and Nancy E. Meabon dated May 10, 1991 ("Martha Medlin").

At the conclusion of the hearing, the claim for an accounting against Martha Medlin was voluntarily **DISMISSED,** leaving only the Trustee's claims against Richard Meabon seeking Revocation of Discharge and Turnover of Property.

## FACTS

On February 23, 2010, Richard Meabon and Evelyn L. Meabon, his wife, (the "Meabons") filed a voluntary Chapter 7 bankruptcy case. Keith Johnson was appointed as Trustee.

The Defendants, Richard Meabon and Medlin, are brother and sister. The parents of the Debtor and Medlin were Raymond B. Meabon and Nancy E. Meabon.

Prior to filing bankruptcy, the Meabons consulted with attorney Rick Mitchell. During that consultation, Richard Meabon disclosed an interest in a trust formed on October 1, 1985 by his parents Raymond B. Meabon and Nancy E. Meabon, (the "1985 Trust"). Mitchell informed Richard Meabon that he would need to disclose his interest in the 1985 Trust as an asset in his bankruptcy schedules. As a result, the Meabons chose not to hire Rick Mitchell as their bankruptcy attorney.

Instead, the Debtors sought out and consulted with another bankruptcy attorney, Martin Hunter. This time, Richard Meabon intentionally failed to mention his interest in the 1985 Trust to Hunter. Richard Meabon testified that he did not disclose the Trust because, notwithstanding Mitchell's advice, he had decided that it wasn't an asset.

2

Moreover, Richard Meabon feared that if disclosed, he might lose his Trust interest in bankruptcy.

Martin Hunter filed the Debtors' bankruptcy case without knowledge of Richard Meabon's interest in the 1985 Trust. Consequently, the Meabons' original bankruptcy schedules did not disclose this interest, despite the requirement in Section 20 of Schedule B that a debtor list any contingent and noncontingent interests in a trust. Richard Meabon did not correct his omission during his testimony at his Section 341 creditors meeting on March 31, 2010. Nor did he amend his schedules to correct the omission.

June 1, 2010 was the last day to object to discharge. With the Trustee and creditors unaware of Richard Meabon's trust interest, the deadline passed without incident. Then, on June 2 or 3, Mr. Mitchell sent an e-mail to Mr. Hunter alerting him to the existence of the 1985 Trust. Over the objections of his client, Mr. Hunter forthrightly alerted the Trustee to Richard's interest in the 1985 Trust. Meanwhile, the Clerk processed the Debtors' discharge, which was entered on June 11, 2010.

It was not until June 21, 2010 that the Meabons, through Hunter, amended Schedule B to disclose the interest. In this amendment, the Debtors advised that Richard Meabon owned a "future interest in a trust executed October 1, 1985 by Raymond B. Meabon and Nancy E. Meabon" (the "1985 Trust")" having an unknown value.

Alerted to the existence of this interest, the Trustee obtained a copy of the 1985 Trust document. This document indicated that Richard Meabon held a vested remainder interest in an irrevocable trust. Richard Meabon informed the Trustee that Richard Meabon's sister, Martha Medlin, was the Trustee under the 1985 Trust. The Trustee requested from Martha Medlin, and received from her, a statement of the trust assets

3

showing that the trust held stocks having a value at the petition date in excess of $350,000.00.

The Trustee filed an Adversary Proceeding, (Case No. 11-3187) against Richard Meabon and Martha Medlin, and obtained a judgment determining that the bankruptcy estate was the owner of this remainder interest. *See* Judgment entered on January 12, 2012, as amended March 15, 2012 (to correct a date). The Defendants did not appeal that decision.

Instead, on or about March 1, 2012, Martha Medlin caused the assets of the 1985 Trust to be transferred into an account at BB&T labeled the "Richard Meabon Trust" account. These monies were immediately transferred from that trust account into the regular checking account of Raymond Meabon, the settlor the Trust and father of the Debtor. The next day, March 2, 2012, an LLC was formed by the adult children of the Raymond Meabon. On March 5, 2012, Raymond Meabon transferred all the assets previously in the 1985 Trust from his personal banking account, to the newly formed LLC. In total, he transferred $425,000. Neither the Trustee, nor this Court, were informed of these steps by the Defendants.

Raymond Meabon died on March 20, 2012.

Upon learning of these transfers, on May 15, 2012, the Trustee filed an Adversary Proceeding, Case No. 12-3121, to recover the $425,000 for the benefit of the bankruptcy estate. A preliminary injunction has been entered in that adversary proceeding freezing the funds previously in the 1985 Trust.

During this proceeding, a question arose as to who was the lawful trustee of the 1985 Trust. At a hearing held on May 3, 2012, relating to the transfer of funds, Martha

Medlin testified that she was the present trustee of the 1985 Trust having been appointed in approximately 1991 when her father was re-writing his will.  On May 8, 2012, the Trustee served a subpoena on Medlin seeking documentation to support her contention. In response to the subpoena, Medlin provided several pertinent documents, including a copy of the 1996 tax return for the 1985 Trust and a Durable Power of Attorney pursuant to which Raymond Meabon appointed Medlin as his attorney-in-fact.  Among these documents was a copy of a trust agreement for a second trust dated May 10, 1991 by which Raymond B. Meabon and Nancy E. Meabon formed a trust with themselves as the primary beneficiaries, and Richard Meabon, Sally Shannon, and Martha Medlin being the secondary beneficiaries (the "1991 Trust").  Medlin is the successor Trustee of the 1991 Trust.

As with the 1985 Trust, Richard's bankruptcy petition and schedules made no mention of the 1991 Trust; nor did he mention it during his creditor's meeting. Consequently, his Trustee was unaware of this second family trust prior to receipt of Medlin's document submission and affidavit on May 11, 2012.  Richard Meabon testified that he did not learn of the 1991 Trust until his father's death, meaning March 30, 2012. Even if true, two years later, Richard Meabon has never amended his schedules to list this asset.

The 1991 Trust provided that after the death of the later to die of Raymond or Nancy Meabon, "the trust shall terminate and the successor Trustee shall distribute the entire principal to the secondary beneficiaries, share and share alike, per stirpes."  The remainder interest in the 1991 Trust was a vested remainder interest owned by Richard Meabon at the time of filing of the bankruptcy.  Given Raymond's death, on March 20,

5

2012, one-third of the 1991 Trust corpus belonged to Richard Meabon and/or his bankruptcy estate.

At trial, the Trustee presented a statement from a previously undisclosed brokerage account in the name of Richard Meabon for the period August 1, 2012 – August 31, 2012, that reflects a balance of $1700. It is not certain when the account was created, but the schedules have never been amended to disclose the account. Richard Meabon testified to not recalling opening that account and stated that he did not know where the funds came from. The evidence is incomplete, but it appears that the funds in this personal account represent a distribution to Richard Meabon from the 1991 Trust.

The Trustee filed this proceeding to 1) revoke Richard Meabon's discharge under §727(d)(1), 2) to account for the 1991 Trust assets, and 3) to order Richard Meabon to turnover of the property the Debtor received from the 1991 Trust.

## DISCUSSION

### I.  Revocation of Discharge

11 U.S.C. §727(d)(1) provides that a discharge shall be revoked if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." The plaintiff in a §727(d)(1) revocation action, in this case the Trustee, bears the burden of proving that 1) the Debtor 1) obtained his discharge by fraud and 2) that the Trustee he did not know of such fraud until after the granting of the discharge. *In re Joyce*, 07-50559, 2009 WL 1606424, at *2 (Bankr. M.D.N.C. June 8, 2009). The elements of an objection to discharge under §727 must be proved by a preponderance of the evidence. *Id.* (*citing Lightfoot v. Landry (In re Landry)*, 350 B.R. 51, 56 (Bankr.E.D.La.2006)).

6

Revocation of a debtor's discharge is an extraordinary remedy. *In re Jordan*, 521 F.3d 430, 433 (4th Cir. 2008). It is a "harsh measure and runs contrary to the general policy of the Bankruptcy Code of giving Chapter 7 debtors a 'fresh start.'" *Id.* (*citing Grochocinski v. Eckert (In re Eckert),* 375 B.R. 474, 478 (Bankr.N.D.Ill.2007)). " The statute is construed strictly against the party seeking revocation and liberally in the debtor's favor." *Id.* (*citing Pierce v. Fuller (In re Fuller),* 356 B.R. 493, 495 (Bankr.D.S.D.2006).

On the other hand, bankruptcy relief is reserved for honest but unfortunate debtors. *Farouki v. Emirates Bank Intern., Ltd.*, 14 F.3d 244, 248 (4th Cir. 1994) (*quoting Lines v. Frederick*, 400 U.S. 18, 19 (1970)). To this end, § 727 prohibits a discharge for those who "play fast and loose with their assets or with the reality of their affairs." *Id.* at 249 (*quoting In re Tully*, 818 F.2d 106, 110 (1st Cir.1987)). Stated otherwise, "the right of debtors to a fresh start depends upon the honest and forthright invocation of the Code's protections...," and are "inherent in the bargain for the discharge." *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996).

**A. The Trustee did not learn of such fraud until after the granting of the discharge.**

As a preliminary matter, the Court must determine whether the Trustee is even entitled to seek revocation of Richard Meabon's discharge. By its terms, Code §727(d)(1) permits a party to seek revocation of discharge only when that party becomes aware of the fraud *after* the discharge is granted. Bankruptcy Rule 4004(a), however, sets a period for objecting to discharge, which will always end prior to the entry of discharge. Thus, an interesting situation arises when a Trustee learns of the fraud *after*

7

the time period to object to discharge has passed but *before* the discharge itself has been granted. This is exactly what happened in this case.

A literal reading of the Code would appear to create an anomalous situation where a debtor could obtain a discharge by fraud that would be insulated from attack as long as the fraud came to light *after* the deadline for objecting to discharge but *before* the discharge is granted. See *In re White*, 133 B.R. 206, 209 (Bankr. S.D. Ind. 1990).

Other courts have addressed this issue and the majority find that the bar date for objecting to discharge is the operative date for purposes of §727(d). *See In re Emery*, 132 F.3d 892, 896 (2d Cir. 1998) (concluding that the interests of justice would best be served in such cases if appropriate parties were allowed to challenge a debtor's right to discharge if they did not learn of the debtor's misconduct until after the Rule 4004 period had expired); *In re Dietz*, 914 F.2d 161, 164 (9th Cir. 1990) (court acted "consistently with the spirit of the bankruptcy rules," and deemed the date of discharge to be the deadline for filing objections to it); *In re Stevens*, 107 B.R. 702, 706 (9th Cir. BAP 1989) ("the rights of parties ... would be unreasonably frustrated, if Rule 4004 were read to create a temporary period when no ... complaint under §727 could be brought"); *In re Staub*, 208 B.R. 602, 606–7 (Bankr.S.D.Ga.1997) ("rational sense" requires that there be no "safe haven gap period").

In this case, the discharge was entered on June 11, 2010. However, the deadline for the Trustee or creditors to object to discharge ran on June 1, 2010. As of June 1, 2010, the Trustee had yet to learn of the existence of Richard Meabon's interest in a trust. It is unclear when exactly the Trustee learned of the trust, but both parties agree that it was after June 1, 2010 and likely before June 11, 2010.

8

Since the Trustee had no knowledge of the trust prior to the discharge objection bar date, his action is not precluded.

**B. Richard Meabon obtained his discharge through fraud.**

Fraud under §727(d) may be shown by the same grounds that would prevent discharge under §727(a). *In re Gallimore*, 00-52225, 2004 WL 1743947, at *10 (Bankr. M.D.N.C. June 8, 2004). In this case, the Trustee argues that Richard Meabon's discharge should be revoked on the grounds that he made a false oath under §727(a)(4) by violating 11 U.S.C. §521 when he intentionally failed to list his interest in the 1985 and 1991 Trusts. The purpose of this section is to "ensure that a debtor provides complete and accurate information to the bankruptcy court and those with an interest in the administration of the debtor's estate." *In re Mack*, No. 07–080496, 2009 WL 2998975, at *3 (Bankr. M.D.N.C. Sep. 18, 2009).

To prevail on a §727(a)(4) action, the court must find, by a preponderance of the evidence, that (1) the debtor made a statement under oath that he knew to be false; (2) about a material matter; and (3) that the debtor made the statement willfully and with the intent to defraud. *Id.* The intentional omission of assets from the debtor's schedules has been found to qualify as grounds for revocation of a discharge under §727(d)(1). *In re Stedham,* 327 B.R. 889, 897 (Bankr. W.D. Tenn. 2005) (*citing* 6 Lawrence P. King, et. al., *Collier on Bankruptcy,* ¶ 727.16[2] (15th ed. rev.1999)).

There is no question that Richard Meabon made statements under oath that he knew to be false, about material matters, and that these statements were made willfully and with the intent to defraud. Prior to filing bankruptcy, Richard Meabon consulted with attorney Rick Mitchell, during which he disclosed his interest in the 1985 Trust.

9

Richard Meabon testified that Mitchell told him he would need to list the trust interest in his petition as an asset. Richard Meabon disagreed and, disliking the advice, chose not to hire Mitchell as his bankruptcy attorney. Shortly thereafter, Richard Meabon met with attorney Martin Hunter, but on this occasion failed to disclose his interest in the 1985 Trust. His nondisclosure was intentional. Richard Meabon stated, under oath, that he purposely did not disclose the trust because he did not want to lose it. He then failed to list the interest in his petition, and he did not correct the omission at his creditors' meeting. Both the petition and creditors' meeting testimony constitute sworn testimony under 28 U.S.C. §1746.

Further, although a debtor has an affirmative duty to amend his schedules to correct errors and omissions,[1] Richard Meabon did not do so until the Trustee was apprised of the existence of the 1985 Trust. Even then, he resisted his then attorney's demand that he make this disclosure, and as recently as the trial still considered that proper request to be "bad legal advice." He subsequently changed attorneys for a third time.

Even when Richard Meabon disclosed the existence of the 1985 Trust, he continued to shade the information which he presented to this court. He listed the interest in the 1985 Trust as having an "unknown value." The fact of the matter was that the total net value of the trust assets was close to $425,000.

The circumstances surrounding the 1991 Trust interest are similar. The 1991 Trust was not scheduled by Richard Meabon in the petition. It was not disclosed in

---

[1] *See Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F. Supp. 2d 637, 651 (W.D. Va. 2013); *In re Clayton*, 235 B.R. 801, 811 (Bankr. M.D.N.C. Feb. 25, 1998); *Mitchell Constr. Co. v. Smith (In re Smith)*, 180 B.R. 311, 318, 320 (Bankr. N.D. Ga. 1995).

10

Richard Meabon's testimony at his creditors meeting. The existence of this interest only came to light as the Trustee pursued the 1985 Trust interest, and then inadvertently. The funding and the disposition of the 1991 Trust assets have never been clearly explained. However, it appears that some portion of the 1991 Trust assets wound up in an individual brokerage account in Richard Meabon's name. That account also was never disclosed to the Trustee, and the account funds have not been turned over.

At trial, Richard Meabon testified that he was not aware of the existence of the 1991 Trust interest until after his father died, meaning after March 30, 2012. Even if true, given his demonstrated unwillingness to disclose his interest in the 1985 Trust, there is no reason to believe that Richard would have disclosed his interest in the 1991 Trust. Either way, the fact remains that Richard Meabon never amended his bankruptcy schedules after March 2012 to disclose the 1991 Trust.

Consequently, the conclusion is inescapable that Richard Meabon that he willfully made several false oaths under §727(a)(4) by failing to list his interests in the 1985 and 1991 Trusts. His discharge is **REVOKED**.

II.     **Turnover of 1991 Trust Assets**

The Trustee's other remaining count asserts that Richard Meabon's interest in the 1991 Trust was estate property, never exempted by the Debtor, and was fraudulently concealed by the Debtor. The Trustee pleads for an order that Richard Meabon turnover and surrender to the Trustee all property he received from the 1991 Trust (as his interest in the 1991 Trust is property that would be property of the estate which the Debtor knowingly and fraudulently failed to report and deliver to the Trustee).

11

The evidence is inconclusive of the value of the Debtor's interest in the 1991 Trust at the petition date.  The only evidence is a brokerage statement from August 1, 2012 – August 31, 2012 reflecting a value of $1,700, which appears to have been funded from the 1991 Trust.

Without excusing the Debtor's failure to disclose this Trust, by the end of the trial, the Trustee did not think that further pursuit of the 1991 Trust assets would be cost-effective given the last indication of its limited value.  The Trustee abandoned his turnover request at the end of the trial.  Therefore, the Trustee's request for turnover is **WITHDRAWN.**

## CONCLUSION

Accordingly, Richard Meabon's discharge is **REVOKED** and the request for turnover is **WITHDRAWN.**

**SO ORDERED.**

| | |
|---|---|
| **This Order has been signed electronically.** <br> **The judge's signature and the court's seal** <br> **appear at the top of the Order.** | **United States Bankruptcy Court** |